IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| KC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 18-3045-CV-S-BP |
| | ) | |
| MARK MAYO, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER AND OPINION GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

Plaintiff initiated this case in state court, asserting claims arising from harassment and sexual misconduct directed at her when she was a student in Junior High and High School in the Marshfield R-1 School District, ("the District.") The defendants in the case are:

- The District

- Mark Mayo, then the District's Superintendent

- Jeffrey Curley, Principal (at various times) at both the Junior High and the High School

- Doug Summers, an Assistant Principal

- Keith White, an Assistant Principal

- Kevin Armstrong, an Assistant Principal or Athletic Director

Mayo has filed a Motion to Dismiss. (Doc. 8). The other Defendants have collectively filed their own Motion to Dismiss. (Doc. 6). For the following reasons, the motions are **GRANTED IN PART** and **DENIED IN PART**; Defendants White and Armstrong are dismissed from Counts III and IV without prejudice, and Count I is dismissed in its entirety.

# I.  BACKGROUND

The following facts can be gleaned when the Petition filed in state court (hereafter, "the Complaint") is construed in the light most favorable to Plaintiff.  Plaintiff participated in track during her seventh and eighth grade years at the Junior High, and her coach was Johnna Feazell. (Doc. 1-2, ¶¶ 11, 13.)  In Plaintiff's eighth grade year (which was the Fall of 2012), Feazell was also Plaintiff's English teacher.  (Doc. 1-2, ¶ 13.)  During this year, Feazell "began to fixate and pay inappropriate attention to" Plaintiff.  (Doc. 1-2, ¶ 13.)  At one point, a fellow student told her mother (another teacher in the District) that Feazell "was talking constantly on the phone with [Plaintiff] and that Feazell had even showed up to see [Plaintiff] at a junior high girls' sleepover." (Doc. 1-2, ¶ 16.)  However, the Complaint does not state that the student's mother told anyone else.

On the bus trip back from one track meet in the Spring of 2013, Feazell "insisted on sitting with [Plaintiff] and rubbing her leg for an extended and clearly inappropriate amount of time, caressing and fondling [Plaintiff's] leg in clear view of the entire bus, including students and other coaches and school officials for 30 minutes."  (Doc. 1-2, ¶ 17.)  However, the Complaint does not specify the other coaches or officials who were on the bus.

Feazell also wrote letters to Plaintiff.  In one letter Feazell told Plaintiff that the two of them were "meant" to be together; in another, she told Plaintiff to destroy the letters.  (Doc. 1-2, ¶ 19.)  Plaintiff's mother found the letters and brought them to Defendants Curley (then the principal of the Junior High) and Mayo.  They promised to take action, and they instructed Feazell to have no further contact with Plaintiff.  (Doc. 1-2, ¶¶ 21, 23.)  During that conversation, it was learned that Feazell had requested to coach softball (although she had never done so previously) because Plaintiff had expressed an interest in joining the team.  (Doc. 1-2, ¶ 22.)  Shortly after this meeting,

Plaintiff's parents discovered that Feazell was still communicating with Plaintiff, via text. In some of those texts, Feazell called Plaintiff "sweetheart" and referred to herself as "momma." (Doc. 1-2, ¶ 24.) Plaintiff's parents brought the texts to Curley's attention, and Plaintiff's mother suggested that perhaps the police needed to be called. Curley convinced her not to call the police and reiterated his prior promise that Feazell's contact with Plaintiff would stop. (Doc. 1-2, ¶¶ 25-26.)

Plaintiff's parents took away her phone, but Feazell bought her a new one. (Doc. 1-2, ¶ 29.) Feazell then communicated with Plaintiff on a regular basis (both over the phone and in person at school) in what the Complaint describes as an effort to exert control over Plaintiff and take advantage of Plaintiff's insecurities. (Doc. 1-2, ¶ 30-32.) These facts were reported to school officials by teachers, but the officials are not identified. (Doc. 1-2, ¶¶ 33-35.) Plaintiff only alleges that "[s]everal teachers reported Feazell to defendant(s) and/or each of them, for violating the prohibition on having contact with" Plaintiff. (Doc. 1-2, ¶ 34.)

The Complaint similarly asserts that other incidents were reported to or known by individuals without specifying who knew about the incident in question. For instance:

- On an unspecified date, Feazell told Plaintiff that she was going to kill herself in a car accident and arrange for Plaintiff to be blamed. Plaintiff reported this threat to a teacher, who Plaintiff alleges "reported this incident to the school and/or defendant(s), and or each of them." (Doc. 1-2, ¶ 38.)

- Plaintiff describes an incident that occurred during softball practice that was seen or known by "[n]umerous school officials, including defendant(s) and/or each of them," but does not specify the officials who saw or knew of the event, much less which (if any) individual Defendants are included in this allegation. (Doc. 1-2, ¶ 41.)

3

- Plaintiff alleges that Feazell molested her during bus trips to and from softball games and that "school officials saw this activity and/or reported it to others," but does not identify the officials referenced in the allegation. (Doc. 1-2, ¶ 42; *see also* Doc. 1-2, ¶ 43.)

These are only a few of the paragraphs in which Plaintiff has generally alleged that some fact or event was known to individuals without (1) identifying the individuals or (2) setting forth the basis for the individual's knowledge. (*See also* Doc. 1-2, ¶¶ 54, 109, 114-15, 123, 131.)

Feazell's attention to Plaintiff continued after Plaintiff began high school in the Fall of 2013. She began attending Plaintiff's school events and even encountered her in the high school. (Doc. 46-52.) Feazell's misconduct included sexual contact with Plaintiff. (*E.g.,* Doc. 1-2, ¶¶ 43, 50-51.) Feazell also told other teachers about her "special relationship" with Plaintiff. (Doc. 1-2, ¶ 53.) There are no allegations that establish any of the Individual Defendants – or any particular person – knew about Feazell's sexual misconduct. However, on one occasion, Feazell arranged for flowers and chocolates to be delivered to Plaintiff at the school, with a card confirming that they were sent by Plaintiff. Curley – now the principal of the High School – was alerted to this event; he responded by talking to Feazell and again instructing her to stay away from, and to stop contacting, Plaintiff. (Doc. 1-2, ¶ 53.)

In October 2013, a classmate of Plaintiff's invited Plaintiff to a sleepover. Feazell approached the classmate's mother (who was a teacher at the high school) and "demanded time with [Plaintiff], and told this teacher she would be picking up [Plaintiff] at her house and taking her so that [they] could 'hang out.' . . . Feazell then began texting her co-worker, telling her she was 'fixing a bedroom for [Plaintiff] at her house and that she intended [for Plaintiff] to come live with her, and asking her not to contact" Plaintiff's parents. (Doc. 1-2, ¶ 56.) The teacher contacted Defendants Summers and Curley and someone referred to as "Principal Mitchell" (who is not a

4

party) and showed them the text messages. (Doc. 1-2, ¶ 57.) The text messages were then shown to Mayo. (Doc. 1-2, ¶ 59.) However, no action was taken except to again talk to Feazell. (Doc. 1-2, ¶ 60.) A few days later, Feazell complained to the teacher about her reports to school officials and "confessed . . . that [Plaintiff] was making her 'a mess' and that Plaintiff was 'consuming her life.'" (Doc. 1-2, ¶ 62.) The teacher reported this conversation to Curley but no further action was taken. (Doc. 1-2, ¶ 62.)

Feazell continued harassing and molesting Plaintiff for the rest of Plaintiff's freshman year and into her sophomore year. (Doc. 1-2, ¶ 64.) At some point during Plaintiff's sophomore year, Plaintiff's mother found the phone Feazell had provided, which contained text messages from Feazell that evidenced her sexual relationship with Plaintiff. Law enforcement was contacted, and Feazell eventually pleaded guilty to four felonies arising from her interactions with Plaintiff. (Doc. 1-2, ¶¶ 61, 65-66.)

The Complaint contains five counts:

- Count I alleges that the Individual Defendants were negligent.

- Count II asserts a claim against the District under Title IX of the Education Amendments of 1972.

- Count III is based on 42 U.S.C. § 1983, and asserts that the Individual Defendants violated Plaintiff's equal protection rights.

- Count IV is an alternative claim under 42 U.S.C. § 1983, asserting that the Individual Defendants violated Plaintiff's due process rights.

- Count V is a claim under 42 U.S.C. § 1983 and *Monell v. Department of Social Services*, 436 U.S. 658 (1978), alleging that the District is liable for the Individual Defendants' violations of Plaintiff's constitutional rights.

The separate motions to dismiss raise similar arguments, so there is no need to differentiate between them. Defendants contend that the Complaint should be dismissed because many allegations about Feazell's conduct are not connected to them, and (relatedly) because it does not contain sufficient facts to plausibly suggest that they had the knowledge necessary to support Plaintiff's federal claims. The Individual Defendants also allege that they are entitled to immunity from the negligence claim asserted in Count I. Plaintiff opposes these arguments. As discussed more fully below, the Court concludes that the Complaint states a claim against the District for violating Plaintiff's rights under Title IX and the Due Process and Equal Protection Clauses, and against Mayo, Curley and Summers for violating Plaintiff's constitutional rights.

## II. DISCUSSSION

When considering a motion to dismiss under Rule 12(b)(6), the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiff[ ]." *Stodghill v. Wellston School Dist.*, 512 F.3d 472, 476 (8th Cir. 2008).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citations omitted). A claim is facially plausible if it allows the reasonable inference that the defendant is liable for the conduct alleged. *E.g., Horras v. American Capital Strategies, Ltd.*, 729 F.3d 798, 801 (8th Cir. 2013).

Dismissal based on an affirmative defense is permissible if the Complaint establishes that the defense exists. *E.g., C.H. Robinson Worldwide, Inc. v. Lobrano,* 695 F.3d 758, 763-64 (8th

6

Case 6:18-cv-03045-BP   Document 31   Filed 05/07/18   Page 6 of 17

Cir. 2012). This is particularly appropriate when the defense is based on an immunity. *E.g., Hager v. Arkansas Dep't of Health,* 735 F.3d 1009, 1013 (8th Cir. 2013).

For ease of discussion, the Court will address Defendants' general arguments regarding the Complaint, then the legal arguments regarding the federal claims. The negligence claim will be discussed last.

### A. Defendants' General Arguments

As will be discussed below, Plaintiff's federal claims depend on alleging the Defendants' knowledge of what was happening to Plaintiff when she was enrolled in school. Defendants contend that the Complaint devotes extensive attention to Feazell's misconduct, but does not contain any allegations that Defendants knew of the misconduct. In response, Plaintiff declines to point to the allegations establishing Defendant's knowledge; "rather than recount all of this behavior, plaintiff would simply ask the Court to consider paragraphs 1-65 of the" Complaint. (Doc. 16, p. 7.)[1] Plaintiff also points to paragraphs in which she concludes that the District "was aware of the molestation, abuse and/or sexual harassment," (Doc. 1-2, ¶ 109), or "knew" other facts, without specifying *how* the District knew or *who* possessed the knowledge chargeable to the District. (Doc. 16, pp. 9-10.)

The Court agrees with Defendants that many of Plaintiff's allegations are conclusory, and that the Complaint does not contain allegations that plausibly explain how various individuals knew about all of Feazell's misconduct set forth in the Complaint.[2] Alleging that a fact was reported to "defendant(s) and/or each of them," "the school and/or defendant(s), and or each of

---

[1] All page numbers are those generated by the Court's CM/ECF system.

[2] In its Reply Suggestions, the District asks the Court to "require[e] Plaintiff to file an Amended Complaint removing any factual allegations related to Ms. Feazell which are not and cannot be connected to notice or knowledge of Defendants . . . ." (Doc. 21, p. 9.) The Court discerns no justification for requiring Plaintiff to amend her Complaint in this manner.

7

them," or even to "defendants" as a collective, is insufficient to make it plausible that the fact was reported to any particular Defendant. And, in many instances Plaintiff simply declares that a Defendant "knew" a fact without any additional allegations that plausibly explain how that Defendant knew the fact in question.

Thus, the Court agrees with Defendants that many (if not most) of the allegations about Defendants' knowledge are conclusory and therefore insufficient to support Plaintiff's claims, and that the Complaint does not plausibly explain how any Defendant knew about all of Feazell's misconduct. But, as the Court's discussion in Part I demonstrates, the Complaint includes some specific allegations about some Defendants, and the Court has presented those facts in the light most favorable to Plaintiff, as the 12(b)(6) standard requires. Whether those facts state a claim will be discussed later in this Order, but the Court rejects Defendants' arguments that the Complaint should be dismissed because it is entirely lacking in allegations related to them.

### B. Count II – Title IX Claim Against the District

The District contends that the Complaint does not adequately allege that it had the knowledge necessary to make it liable under Title IX. Notwithstanding the many conclusory allegations that the Court cannot consider (as discussed in Part II.A), the Court disagrees with the District.

Title IX provides that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ." 20 U.S.C.A. § 1681(a). Under Title IX, a school district can be liable for damages when a teacher sexually harasses a student. *E.g., Franklin v. Gwinnett County Pub. Sch.,* 503 U.S. 60, 74-75 (1992). However, the Supreme Court has held that a theory of *respondeat superior* is insufficient to impose liability on a school

8

Case 6:18-cv-03045-BP    Document 31    Filed 05/07/18    Page 8 of 17

district under Title IX. *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 285-90 (1998). "[A] damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond." *Id.* at 290.

There can be little doubt that a report to the superintendent is sufficient to satisfy this standard. "It is [also] apparent from Supreme Court precedent . . . that school principals are considered 'appropriate persons' in the Title IX analysis." *Plamp v. Mitchell Sch. Dist. No. 17-2,* 565 F.3d 450, 457 (8th Cir. 2009). Therefore, the Court focuses on the information known to Mayo and Curley. In so doing, the Court does not examine the Complaint to see if Mayo or Curley were explicitly told that Feazell was engaging in sexual conduct with Plaintiff because that specificity is not necessary. First, Title IX prohibits harassment, so conduct that falls short of sexual activity can violate Title IX. Second, "courts have generally held that the school must have actual knowledge of a substantial risk of abuse to students based on prior complaints . . . ." *Thomas v. Board of Trustees of the NE State Colleges,* 2015 WL 4546712, *9 (D. Neb. 2015) (quotation omitted); *see also K.T. v. Culver-Stockton Coll.,* 865 F.3d 1054, 1058 (8th Cir. 2017); *Doe v. School Bd. of Broward County, FL,* 604 F.3d 1248, 1258-59 (11th Cir. 2010); *Escue v. Northern OK Coll.,* 450 F.3d 1146, 1154 (10th Cir. 2006). So the question before the Court is: Construing the facts in Plaintiff's favor, did Curley or Mayo have sufficient information to put them (and, therefore, the District) on notice that there was a substantial risk that Feazell was engaged in harassing conduct (or worse) toward Plaintiff? The Court concludes that they did.

Curley and Mayo knew the following facts: When Plaintiff was in the eighth grade, Feazell wrote letters to Plaintiff and indicated that they were "meant" to be together, and that Plaintiff

9

should destroy the letters. They also learned that Feazell asked to coach softball – a sport that she had never coached before – after Plaintiff joined the team. Feazell also coached track, and Plaintiff was on the track team. Curley and Mayo responded to this information by telling Feazell not to have further contact with Plaintiff. Shortly thereafter, Curley and Mayo learned that after their admonition was not heeded because Feazell was texting Plaintiff, calling her "sweetheart" and referring to herself as "momma." Plaintiff's mother was dissuaded from contacting the authorities, and Feazell was again instructed not to contact Plaintiff. Once Plaintiff entered high school, Feazell had chocolates and flowers delivered to her during school. Curley learned of this, and responded by reiterating that Feazell was not to contact Plaintiff. Curley and Mayo were then shown texts from Feazell advising another teacher that she (Feazell) was fixing a bedroom in her house for Plaintiff because Plaintiff was going to live with her, and asking the teacher not to tell Plaintiff's parents. Feazell was talked to again, at which point she re-contacted the teacher and confessed that she was preoccupied with Plaintiff; the teacher reported these comments to Curley as well. Nonetheless, no further action was taken. Feazell's sexual misconduct toward Plaintiff continued until she was arrested a year later.

The District downplays some of these facts by comparing them to the facts in other cases. For instance, the Eighth Circuit held that a teacher's text message to a female student stating "OMG you look good today" and the student's "familiar" behavior with the teacher, without more, did not suggest sexual abuse or conduct. *Doe v. Flaherty,* 623 F.3d 577, 585 (8th Cir. 2010). The fact that a teacher spends a lot of time with a student has also been held insufficient to satisfy the knowledge requirement. *P.H. v. School Dist. Of Kansas City, MO,* 265 F.3d 653, 659 (8th Cir. 2001). However, the case at bar presents far different facts. Curley's and Mayo's knowledge of events spans a significantly larger period of time, and involves communications and conduct that

10

is more suggestive of harassment.  Their knowledge also includes reports of Feazell's repeated violations of their instructions with respect to contacts with Plaintiff.  Construed in the light most favorable to Plaintiff, Curley's and Mayo's knowledge consisted of more than isolated instances of mildly inappropriate or equivocal conduct by Feazell, so the cases the District relies on do not dictate dismissal of Plaintiff's Title IX claim.

The Court's summary of the District's knowledge (through Curley and Mayo) does not include Plaintiff's general allegations that the District "knew" various facts.  It also does not include information that Plaintiff describes as having been conveyed to unnamed school officials.  The Court holds that the facts allegedly reported to Curley and Mayo (and, therefore, the District) were arguably sufficient to impart knowledge that Feazell was harassing Plaintiff (if not worse).  Accordingly, the Court holds that Count II states a claim against the District.

### C.  Counts III and IV – § 1983 Claims Against the Individual Defendants

In arguing that Plaintiff's constitutional claims should be dismissed, Defendants do not contend that the Complaint fails to adequately allege that Plaintiff's equal protection or due process rights were violated.  Instead, in an argument similar to the District's, they argue that the Complaint fails to sufficiently allege their knowledge, so the § 1983 claims against them must be dismissed.  The Court agrees insofar as Plaintiff's claims against White and Armstrong are concerned, but disagrees as to Mayo, Curley and Summers.

Normally, "a supervisor incurs liability for a violation of a federally protected right when the supervisor is personally involved in the violation or when the supervisor's corrective inaction constitutes deliberate indifference toward the violation."  *Ottman v. City of Independence,* 341 F.3d 751, 761 (8th Cir. 2003).  This general rule does not apply when (1) the claim is asserted against a supervisor at an institution that receives Title IX funding and (2) that claim is based on

11

another person's violation of a student's federally protected right. *Cox v. Sugg,* 484 F.3d 1062, 1066-67 (8th Cir. 2007). In order to make sure that school officials are not held liable when the school itself is not, the Eighth Circuit "has determined that the individual liability of a supervisory school official under § 1983 should be measured by the standards of the institution's Title IX liability established in *Gebser*." *Doe v. Flaherty,* 623 F.3d at 584. Accordingly, the Court's inquiry for purposes of the individual Defendants' liability under Counts III and IV is similar to the inquiry conducted for purposes of the District's liability under Count II. *See id.*

For the reasons expressed earlier, the Court concludes that the Complaint alleges Curley and Mayo had actual knowledge of a substantial risk that Feazell was violating Plaintiff's rights. The Complaint's allegations about Curley's and Mayo's knowledge are sufficient to satisfy *Gebser*'s knowledge requirement and state a claim against the District under Title IX. Therefore, those allegations are also sufficient to satisfy *Gebser*'s knowledge requirement and state claims against Curley and Mayo individually under § 1983.

The Court also concludes that the Complaint states a claim against Summers. Summers was in the meeting where a teacher reported Feazell's desires to (1) "take" Plaintiff from a sleepover so that they could "hang out" without Plaintiff's parents' knowledge and (2) have Plaintiff live with her. (Doc. 1-2, ¶ 56.) The teacher showed Curley, Mayo and Summers Feazell's text messages, and she was told "that Feazell was in violation yet again of her 'no contact' rule." (Doc. 1-2, ¶ 59.) Thus, the Complaint alleges that Summers was aware that Feazell was not supposed to contact Plaintiff when she sent the text messages to the teacher, and that this was not the first time Feazell had violated that instruction. Construed in Plaintiff's favor (and taking into account the content of Feazell's text messages), the Complaint alleges that Summers was aware of a substantial risk that Feazell was violating Plaintiff's rights.

12

The Court reaches a different conclusion with respect to White and Armstrong because the Complaint does not allege anything about their knowledge. White is mentioned by name only twice: once to identify him as an assistant principal, and once to allege that he had a duty to protect Plaintiff. (Doc. 1-2, ¶¶ 5, 68.) The same is true of Armstrong. (Doc. 1-2, ¶¶ 6, 68.) The Complaint does not allege that they were told anything about Feazell's conduct with respect to Plaintiff.[3]

For the reasons set forth above, the Court concludes that Counts III and IV state a claim against Curley, Mayo and Summers. However, the allegations are insufficient to state a claim against White or Armstrong, and they are dismissed without prejudice.

### D.  Count V – Section 1983/Monell Claim Against the District

Count V alleges that the District is liable under § 1983 for the constitutional violations of its employees.[4] A plaintiff alleging that a governmental entity (including a school district) is liable under § 1983 must allege and prove that her federal rights have been violated, and must also allege and prove the additional elements set forth in *Monell v. Department of Social Servs.,* 436 U.S. 658 (1978). The District presents several theories to support its argument that Count V should be dismissed, but the Court does not find them to be meritorious.

"Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Corwin v. City of Independence., MO.*, 829

---

[3] As discussed in Part II.A, the Complaint includes conclusory allegations asserting that "Defendants" knew certain facts, without explaining how any particular Defendant plausibly knew the facts in question. These facts do not satisfy the standard set forth in *Iqbal* and cannot be considered when determining whether Plaintiff has alleged White or Armstrong possessed the knowledge necessary to make them liable under § 1983.

[4] The District suggests that Count V should be dismissed because § 1983 only provides a remedy for violations of federal rights, and Count V does not allege any violations of Plaintiff's constitutional rights. (*E.g.,* Doc. 21, p. 8.) However, the District concedes that Counts III and IV assert violations of Plaintiff's constitutional rights by the Individual Defendants, (*id.*), and read in context Count V is Plaintiff's attempt to impose liability on the District for the Individual Defendants' violations of Plaintiff's constitutional rights.

13

F.3d 695, 699 (8th Cir. 2016) (quotations and citations omitted). A policy is an expression of the municipality's deliberate choice to adopt a guiding principle or procedure, *e.g., id.,* and Plaintiff does not seem to allege that the District deliberately adopted an unconstitutional policy. Instead, Count V is predicated on a theory that the District had an unofficial custom of not reporting complaints of harassment or that it inadequately trained its employees how to deal with such complaints.

A custom is established by demonstrating "(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation." *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014). Similarly, a claim based on inadequate training requires that the entity was deliberately indifferent to the rights of people who would come into contact with the entity's employees. *E.g., City of Canton, OH v. Harris,* 489 U.S. 378, 388 (1988); *Atkinson v. City of Mountain View, MO,* 709 F.3d 1201, 1216-17 (8th Cir. 2013). Under both theories, the governmental entity's decision makers must have notice because without notice the entity cannot be found to have been deliberately indifferent. "Notice is the touchstone of deliberate indifference in the context of § 1983 municipal liability." *Atkinson,* 709 F.3d at 1216.

The District's primary argument is that the Complaint does not allege facts necessary to establish notice under § 1983 "because the [School] Board, not the individual Defendants as Plaintiff claims, is the final policymaking body for purposes of 42 U.S.C. § 1983." (Doc. 7, p. 10.) However, the District does not sufficiently establish, either as a matter of law or fact, that the

14

members of the school board are the District's only policymakers.  In particular, the District does not sufficiently explain why notice to Mayo – the Superintendent – is insufficient.  The District cites two cases, neither of which holds that only notice to the members of a School Board will satisfy the notice requirements under § 1983.  Those cases also do not hold that notice to the Superintendent of a school district is insufficient.  *See Jane Doe A by and through Jane Doe B v. Special Sch. Dist. of St. Louis County,* 901 F.2d 642, 645 (8th Cir. 1990); *Thelma D. v. Board of Educ. of City of St. Louis,* 737 F. Supp. 541, 544-45 (E.D. Mo. 1990).  Thus, the District's has not sufficiently supported its argument.

The District also argues that Plaintiff's claim based on inadequate training must be dismissed because according to the Complaint, "the District has policies prohibiting sexual abuse of students and outlining procedures for handling[,] reporting, investigating, and remedying such abuse.  These same policies require the District to train employees related thereto and Plaintiff admits training was occurring."  (Doc. 7, pp. 13-14.)  The District further argues that "based on Plaintiff's own allegations, it appears the policies were effective."  (Doc. 7, p. 14.)  These arguments do not justify dismissal.  The fact that the District had policies and training in place does not (1) disprove the existence of a contrary, unofficial custom of ignoring those policies, (2) establish that the training was sufficient, or (3) contradict the allegations that the District (through Mayo) know that the training was insufficient and was thereafter deliberately indifferent to that insufficiency.  As to the District's latter point: a fair reading of the Complaint does not lead to the conclusion that Plaintiff has alleged the District's training and policies were effective.

For these reasons, dismissal of Count V is not warranted at this time.

15

Case 6:18-cv-03045-BP   Document 31   Filed 05/07/18   Page 15 of 17

## E. Count I – Negligence Claims Against the Individual Defendants

Finally, the Court considers the Individual Defendants' request to dismiss Count I, which alleges that they were negligent in failing to take greater steps to protect Plaintiff from Feazell's conduct and in failing to make a report to the authorities as (according to Plaintiff) required by state law. Defendants argue that they are entitled to official immunity under state law and are also entitled to immunity pursuant to protections provided by the Coverdell Act, 20 U.S.C. § 7946. Plaintiff argues that the Coverdell Act does not protect Defendants, but she does not respond to Defendants' argument that they are entitled to official immunity. The Court concludes that Defendants are entitled to official immunity under state law, making it unnecessary to consider the Coverdell Act.[5]

"Under Missouri law, official immunity 'protects public employees from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts.'" *K.B. v. Waddle*, 764 F.3d 821, 824 (8th Cir. 2014) (quoting *Southers v. City of Farmington,* 263 S.W.3d 603, 610 (Mo. 2008) (en banc)). "The determination of whether an act is discretionary or ministerial is made on a case-by-case basis, considering: (1) the nature of the public employee's duties; (2) the extent to which the act involves policymaking or exercise of professional judgment; and (3) the consequences of not applying official immunity." *Southers,* 263 S.W.3d at 610. An official acts with bad faith, and is not entitled to official immunity, when he is conscious of his wrongdoing or breaches a known duty through some ulterior motive, and an official "acts with malice when he wantonly does that which a man of reasonable intelligence

---

[5] The Court previously discussed the Complaint's lack of specific allegations about White and Armstrong. That discussion would lead to dismissal of Count I as to White and Armstrong even if they were not entitled to official immunity.

would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." *Davis v. White*, 794 F.3d 1008, 1013 (8th Cir. 2015) (quotations omitted).

The Eighth Circuit has held that whether to report a person to the authorities (even under mandatory reporting statutes) is a discretionary act. "[T]o trigger the reporting requirement, there must be 'reasonable cause' to suspect abuse, and that 'reasonable cause' determination requires an exercise of discretion and personal judgment, which takes the matter out of the realm of a ministerial act." *K.B.,* 764 F.3d at 825 (quotations omitted). Determining how to deal with complaints about a teacher's misconduct requires the same exercise of judgment. Finally, there are no allegations that the Individual Defendants intended to cause Plaintiff harm, and Plaintiff has not alleged the bad faith or malice necessary to deprive them of their official immunity as described in *Davis*. For these reasons, the Court concludes that official immunity protects the Individual Defendants from the negligence claim asserted in Count I.

### III.  CONCLUSION

Defendants' Motions to Dismiss are **GRANTED IN PART** and **DENIED IN PART.** Count I is dismissed because the Individual Defendants are entitled to official immunity. Defendants Keith White and Kevin Armstrong are dismissed without prejudice from Counts III and IV because the Complaint does not allege facts necessary to state a claim against them. The motions are denied in all other respects.

IT IS SO ORDERED.

/s/ Beth Phillips
BETH PHILLIPS, JUDGE
DATE:  May 7, 2018                    UNITED STATES DISTRICT COURT